```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
                              **LEXINGTON**

PERRY A. ROSSI,                )
                               )
     Plaintiff,                )   Civil Action No. 06-111-JMH
                               )
v.                             )
                               )
TOYOTA MOTOR MANUFACTURING,    )
KENTUCKY, INC.,                )   **MEMORANDUM OPINION AND ORDER**
                               )
     Defendant.                )
                               )
                               )

                   **     **     **     **     **

Before the Court is defendant Toyota Motor Manufacturing, Kentucky, Inc.'s ("TMMK" or "Defendant"), motion to dismiss, or in the alternative, motion for summary judgment ("motion") [Record No. 3]. Plaintiff responded [Record No. 5] and Defendant replied [Record No. 6]. The Court being sufficiently advised, the matter is ripe for review.

                       **I.   Factual Background**

On April 13, 2006, Plaintiff filed a Complaint *pro se* in this Court against Defendant. While the claims are not presented with complete clarity, this Court liberally construes the complaint to allege violations of the Family and Medical Leave Act of 1993 ("FMLA") (29 U.S.C. § 2601 et seq.), the Occupational Health and Safety Act ("OSHA") (29 U.S.C. § 651 et seq.), environmental protection statutes, the National Labor Relations Act ("NLRA") (29 U.S.C. § 151 et seq.), the Americans With Disabilities Act ("ADA")

1

(42 U.S.C. § 12101 et seq.), the First Amendment right to free speech (U.S. Const. amend. I), Kentucky's Workers' Compensation Act (KRS § 342 et seq.), the right of the Plaintiff to review his personnel file, and Kentucky's Wage and Hour laws (KRS § 337 et seq.).[1]

Plaintiff was employed by TMMK as a Maintenance Team Leader. Prior to his formal termination on April 15, 2004,[2] Plaintiff was temporarily assigned to a special projects team.  On March 23, 2004, Plaintiff was informed that his assignment with the special projects team was complete and that he would be returning to his regular duties in the maintenance group.  Upon being informed of his re-assignment, a confrontation which was witnessed by other TMMK employees ensued between Plaintiff and a member of TMMK's management.  The parties dispute the extent and severity of the confrontation.

Plaintiff's personnel records indicate that sometime prior to April 13, 2004, Defendant recommended that Plaintiff's employment be terminated due to the March 23, 2004, incident. (Gogel Aff. 1). Plaintiff's personnel records, along with an affidavit of Andrea Gogel, Assistant Manager of Human Resources at TMMK, also indicate

---

[1] The Court acknowledged that it must liberally construe a *pro se* Plaintiff's complaint.  *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[2]   The parties do not dispute the date of formal termination. (*See* Pl.'s Compl. 4; *see also* Def.'s Mot. Dismiss 3).

2

that, pursuant to Defendant's Peer Review Committee process, Plaintiff was notified of his termination prior to April 13, 2004, and was given the option of having his termination recommendation reviewed by a five-member panel of his peers. Plaintiff opted for the Peer Review, which occurred on April 14, 2004. The Peer Review Panel voted four to one in favor of accepting Defendant's termination recommendation.[3] Defendant formally terminated Plaintiff's employment on April 15, 2004.

On August 6, 2004, the United Auto Workers of America ("UAW") filed a charge with the National Labor Relations Board ("NLRB") on Plaintiff's behalf. The charge alleged that Plaintiff was terminated because of his union activities at TMMK. (*See* Ex. C to Def.'s Mot.). Sometime prior to August 27, 2004, the UAW requested to withdraw the charge against TMMK. The case was formally closed by the NLRB on August 27, 2004. (*See* Ex. D to Def.'s Mot.).

On or before February 15, 2005, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") claiming that his employment with Defendant was terminated due to his age and alleged disability, in violation of the Age Discrimination in

---

[3] According to § 8.12 of the "2004 TMMK Team Member Handbook," (attached as Ex. C to Def.'s Mot.) TMMK recommends a team member's termination, but prior to discharging a qualified team member, the team member has the option of having the termination recommendation reviewed by a Peer Review Committee. TMMK will consider the recommendation of the Peer Review Committee, however, "the ultimate decision whether or not to terminate a team member's employment rests with the management of TMMK."

Employment Act and the ADA, respectively. (*See* Ex. E to Def.'s Mot.). The EEOC dismissed Plaintiff's claim on February 23, 2005. In the notice of dismissal addressed to Plaintiff, the EEOC noted that Plaintiff had ninety (90) days from receipt of the notice in which to file suit. (*See* Ex. F to Def.'s Mot.).

Plaintiff's complaint, which was filed nearly two years after the termination of his employment with TMMK, alleges that his termination violated numerous statutes. Plaintiff also contends TMMK committed several statutory violations unrelated to his termination. The facts relevant to each claim are discussed below.

## II. Standard of Review

The matter before the Court is Defendant's motion to dismiss, or in the alternative, motion for summary judgment. Defendant's motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. According to Rule 12(b), when "matters outside the pleading are presented to and not excluded by the court," the Rule 12(b)(6) motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided by Fed. R. Civ. P. 56 ("Rule 56"). Matters outside of the pleading were presented in this motion, therefore, the Court will treat the motion as one for summary judgment and dispose of it in accordance with Rule 56. A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

4

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment.

*Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Rule 56(e) provides that:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The Sixth Circuit has held that if the moving party meets its initial burden and the nonmoving party fails to respond, "its opportunity is waived and its case wagered." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). "Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Id.* The court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* at 407. Thus, if the defendant meets its burden in moving for summary judgment on the unopposed issues, then summary judgment

6

would be proper. *Cacevic v. City of Hazel Park,* 226 F.3d 483, 492 (6th Cir. 2000); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

The fact that Plaintiff is proceeding *pro* se does not affect the standard by which this Court reviews Defendant's motion. In *Brock v. Hendershott,* 840 F.2d 339 (6th Cir. 1988), this Circuit announced the rule that nonprisoner civil litigants who proceed *pro se* are not entitled to special consideration which prefers them over parties who are represented by attorneys. *Id.* at 343. The court, following the reasoning of *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986), reached its conclusion out of a sense of fairness to other parties who "choose counsel and must bear the risk of their attorney's mistakes." *Brock,* 840 F.2d at 343. Therefore, the Court reasoned, "a litigant who chooses *himself* as a legal representative should be treated no differently." *Id.* (citing *Jacobsen*, 790 F.2d at 1365-65). The Sixth Circuit Court of Appeals reiterated its position when it stated in *McKinnie* that nonprisoner civil litigants who proceed *pro se* "are not entitled to special treatment, including assistance in regards to responding to dispositive motions." *McKinnie*, 341 F.3d at 558.

### III. Analysis

**A. FMLA**

Plaintiff contends Defendant violated his rights under the FMLA by (1) terminating his employment in retaliation for invoking

7

his rights under the FMLA; (2) failing to post notice of employees' FMLA rights as required by 29 U.S.C. § 2619(a); (3) misleading him about the FMLA definition of "key employee"; (4) denying his FMLA request forms; (5) failing to inform him of his FMLA rights from the years 1995 to 1999; (6) not offering him FMLA leave in 1999 when his mother was ill; (7) denying him a perfect attendance award in 2003; and (8) allowing a supervisor to laugh at his definition of "perfect attendance" under the FMLA. Each of Plaintiff's claims are addressed below.

> The FMLA's statute of limitations provides:
>
> (1) In general - Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.
> (2) Willful violation - In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C.A. § 2617(c). Plaintiff's claims were filed with this Court on April 13, 2006. As the evidence could only lead a reasonable person to conclude that Plaintiff's employment with Defendant was terminated prior to April 13, 2004, Plaintiff's numerous FMLA claims are barred by the two-year statute of limitations.

When applying the statute of limitations to a plaintiff's wrongful termination action, courts have held that the cause of action accrues when the plaintiff *receives notice* that his

8

employment is being terminated, regardless of when his employment is actually terminated. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (holding that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful") (emphasis in original) (citing *Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980)); *Janikowski v. Bendix Corp.,* 823 F.2d 945 (6th Cir. 1987) (holding that cause of action for wrongful termination accrued under the Age Discrimination in Employment Act when employee received notice of termination, not when his employment was formally terminated).

The affidavit of Defendant's assistant manager of human resources, Andrea Gogel, (Ex. A to Def.'s Mot.) states that based on the March 23, 2004, incident between Plaintiff and his assistant manager, the decision was made to terminate Plaintiff's employment. (Gogel Aff. 1) The affidavit also states that Plaintiff was notified of this termination decision prior to April 13, 2004. After being informed of the termination decision, Plaintiff opted to have the termination decision reviewed by the Peer Review Committee. The Peer Review occurred on April 14, 2004, at which time the Committee voted to uphold Plaintiff's termination. Plaintiff's termination was finalized on April 15, 2004. (Gogel Aff. 2)

While Plaintiff's response to Defendant's motion states that he was not informed of his termination until April 14, 2004, (Pl.'s

9

Resp. to Def.'s Mot. 2) which would render his complaint timely filed, he does not offer sworn testimony to that effect, nor does a reasonable review of the facts necessitate that conclusion. In fact, a reasonable person would necessarily conclude that Plaintiff was aware of the termination decision *prior to* the April 14, 2004, Peer Review. Plaintiff appears to be well-versed in the TMMK Member Handbook, in which case he would know that Peer Reviews are called for the purpose to reviewing termination recommendations, which are necessarily made *before* the Peer Review takes place. Plaintiff's response states that he requested permission to bring his attorney to the Peer Review and to call witnesses, which shows he was aware of the termination decision prior to April 14, 2004. This comports with the Human Resource employee's sworn statement that Plaintiff was notified of his termination prior to April 13, 2004. (Gogel Aff. 1)

Defendant met its burden on summary judgment to show that no genuine issue of material fact exists as to the date Plaintiff became aware of the termination decision, and Plaintiff did not support his allegation that he was not informed of the termination decision until after April 14, 2004. Plaintiff's own response indicates that he was informed of his termination prior to April 13, 2004, which would make any claim filed April 13, 2006, or after barred by the FMLA's two-year statute of limitations. Summary judgment for Defendant is warranted on Plaintiff's claim that he

was terminated in violation of the FMLA.

In his response, Plaintiff attempts to impress upon the Court that Defendant's alleged FMLA violations were willful, however, Plaintiff offers no evidence of such willful conduct. When seeking to apply the FMLA's three-year statute of limitations, the plaintiff is "clearly required to show willfulness in order to get the benefit of the FMLA's extended three-year statute of limitations for willful violations." *Hoffman v. Professional Med Team*, 394 F.3d 414, 417 (6th Cir. 2005). This Circuit has defined willfulness under the FMLA as follows: "An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 603 (6th Cir. 2004); *see also Williams v. Northwest Airlines, Inc.,* 53 F. App'x 350, 352 (6th Cir. 2002) (unpublished) (stating that "[a] willful violation [of the FMLA] is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited") (citing *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132-35 (1988)).

With the exception of several gratuitous usages of the word "willful," Plaintiff offers no evidence that Defendant intentionally or recklessly violated its obligations under the FMLA. Plaintiff did not meet his burden of proving willful violation of the FMLA, therefore, Plaintiff's FMLA claims are not

11

subject to the three-year statute of limitations. There is only one usage of the word "willful" in Plaintiff's complaint, in which he states that Defendant "willfully, purposely and with malice placed items in my personnel file that were not true . . .." (Pl.'s Compl. 2) This is not evidence, nor even an allegation, that Defendant willfully violated the FMLA. Perhaps noting the statute of limitations bar addressed in Defendant's motion to dismiss, or in the alternative, for summary judgment, in his response, Plaintiff gratuitously interjects the word willful on six occasions, yet still fails to show that Defendant's purported violations of the FMLA were either intentional or reckless.

As to Plaintiff's claim that Defendant violated the FMLA by failing to post notice of employees' rights under the statute, it has previously been held that there exists no private right of action for violation of the notice requirement of the FMLA. *See Jessie v. Carter Health Care Ctr., Inc.,* 926 F. Supp. 613, 617 (E.D. Ky. 1996). Summary judgment in favor of Defendant is warranted on this claim.

Plaintiff's third through eighth allegations of FMLA violations by Defendant all fail for the same reason - they are barred by the applicable statute of limitations. Each of these allegations of wrongdoing necessarily occurred before Plaintiff's last day of work at TMMK, which was undisputedly March 23, 2004. As Plaintiff's Complaint was not filed until April 13, 2006, each

of these claims are barred by the two-year statute of limitations found at 29 U.S.C. § 2617(c)(1). Plaintiff does not prove, and in fact, does not even allege, that these violations were willful, therefore the extended three-year statute of limitations permitted by 29 U.S.C. § 2617(c)(2) does not redeem these claims. These claims of FMLA violations are dismissed.

**B.  Work-Related Injury on Last Day**

While not entirely clear, Plaintiff's complaint seems to allege that Defendant violated the law when it failed to provide him with medical care for an injury he allegedly suffered while working at TMMK. Plaintiff claims he "passed out and hit my head in the maintenance area restroom" on his last day of work.[4] (Pl.'s Compl. 3) Defendant asserts, and Plaintiff fails to respond with any authority to the contrary, that Plaintiff's claim for a workplace injury is preempted by KRS § 342.690. KRS § 342.690 provides that Workers' Compensation is the exclusive remedy for all workplace injuries.

The Kentucky Workers' Compensation Act also provides that an employee who sustains a workplace injury shall give the employer notice of that injury within two years of its occurrence, otherwise, compensation shall not be available for that injury under the Workers' Compensation Act. KRS § 342.185(1).

---

[4] Defendant states Plaintiff's last day of work was March 23, 2004, a fact that Plaintiff does not dispute. (Def.'s Mem. in Supp. 2)

13

Plaintiff's injury occurred on March 23, 2004, and by his own admission, he did not give TMMK notice of the injury on that day. (Pl.'s Compl. 3)  Plaintiff offers no evidence that he notified TMMK of the injury prior to March 23, 2006.[5]

Plaintiff's workplace injury claim is dismissed for failure to state a claim on which relief can be granted.

### C. No Review of Personnel File

The plaintiff claims Defendant deprived him the right to review his personnel file on April 14, 2004.  Plaintiff fails to offer any source of this right which he claims was denied him.  In Kentucky, employees of public agencies have a right to review their personnel files pursuant to KRS § 18A.020(3), however, no corresponding right exists for private sector employees. Plaintiff's claim that he was denied the right to review his personnel file is dismissed for failure to state a claim upon which relief can be granted.

### D. Back Pay

Plaintiff's claim that he is still owed three days pay by Defendant is not properly before this Court.  This claim is properly addressed under Kentucky's Wage and Hour laws and because Plaintiff's other claims are dismissed, there is no supplemental jurisdiction over this state law claim.  Accordingly, Plaintiff's

---

[5] This lawsuit was commenced on April 13, 2006, at which time Plaintiff mentions the March 23, 2004, workplace injury in his complaint.

14

claim for back wages from Defendant is dismissed.

**E.    ADA**

Plaintiff's complaint can be construed to assert a claim under the ADA when he states that he was "fired in retaliation for . . . my health conditions, specifically my Crohn's disease and breathing problems."  (Pl.'s Compl. 4)  While Plaintiff recounts his battle with Crohn's disease and the various surgeries it required (Pl.'s Resp. to Def.'s Mot. 8), he offers no evidence in support of his claim that Defendant discriminated or retaliated against him because of that disease.  Plaintiff also fails to refute Defendant's argument that regardless of the merits of such claim under the ADA, it is otherwise barred by the applicable statute of limitations.

42 U.S.C. § 2000e-5(f)(1) provides in pertinent part: "If a charge filed with the [Equal Employment Opportunity] Commission . . . is dismissed by the Commission, . . . the Commission shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."  Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that TMMK discriminated against him because of his age[6] and disability.  (Ex. E to Def.'s Mot.)  The EEOC notified Plaintiff on February 23,

---

[6] In the instant case, Plaintiff does not allege a violation of the Age Discrimination in Employment Act.

2005, that it was dismissing the charge against TMMK because it "was unable to conclude that the information obtained establishes violations of the statutes." (Ex. F to Def.'s Mot.) The Dismissal and Notice of Rights emphasized in bold, underlined, all capital print, that Plaintiff had ninety (90) days from receipt of the notice in which to file a lawsuit based on the incidents in the charge. This lawsuit was not filed until April 13, 2006, much more than ninety days after Plaintiff would have received the February 23, 2005, notice. Any claim Plaintiff may have against Defendant under the ADA is barred by the statute of limitations and is accordingly dismissed.

**F. NLRA**

Plaintiff's claim that Defendant terminated his employment because of his participation in efforts to unionize Defendant's Georgetown, Kentucky, plant is not properly before this Court and Plaintiff offers no evidence to the contrary. Section 7 of the NLRA gives employees the right, among other things, "to self-organization, to form, join, or assist labor organizations . . . ." 29 U.S.C. § 157. Section 8 of the NLRA makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). Plaintiff's contention that he was harassed and terminated by Defendant because of his attempts to form, join, or assist the United Auto Workers

16

labor organization falls squarely within the scope of sections 7 and 8 of the NLRA; therefore, these claims should be heard by the National Labor Relations Board ("NLRB"), not this Court. "When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959).

On August 6, 2004, Larry Moffatt, acting as organizing coordinator for the United Auto Workers' union in fact filed a charge against Defendant on Plaintiff's behalf in which it claimed Defendant violated § 8(a)(1)(3) of the NLRA by terminating Plaintiff "for his union activities and support." (Ex. C to Def.'s Mot.) A letter dated August 27, 2004, from the NLRB to Mr. Moffatt indicates that the charge filed against Defendant on Plaintiff's behalf was withdrawn at Mr. Moffatt's request and the case was closed in the NLRB records. (Ex. D to Def.'s Mot.)

The NLRA provides a six month statute of limitations for filing a charge with the NLRB. 29 U.S.C. § 160(b). As any NLRA grievances Plaintiff may have against Defendant necessarily accrued before his termination at TMMK, which occurred on April 15, 2004, Plaintiff's withdrawn charge cannot be refiled with the NLRB. While Plaintiff testifies via an affidavit attached to his response to Defendant's motion that it was his understanding, based on

17

conversations with Mr. Moffatt, that Mr. Moffatt did not withdraw the charge against Defendant, the letter from the NLRB to Mr. Moffatt confirming the withdrawal of the charge cannot lead a reasonable person to any conclusion except that the charge was withdrawn.

Plaintiff's claim that his employment was terminated in violation of the NLRA is dismissed.

### G. OSHA

Plaintiff claims Defendant unlawfully terminated his employment for "bringing up . . . OSHA, EPA and and (sic) safety issues." (Pl.'s Compl. 1) Specifically, Plaintiff claims his employment was terminated by Defendant in retaliation for "bringing to light the fact that we were using improper safety glasses"; "reporting potential OSHA violations to Toyota supervisors"; and "reporting to Toyota supervisors the fact that the abatement system condenser coil was not working on at least 2 occasions" which resulted in "polluting the air in and around the city of Georgetown." (Pl.'s Compl. 4)

Acting under the authority of 29 U.S.C. § 667, Kentucky has exercised jurisdiction over occupational health and safety standards. *See* KRS § 338 *et seq.* Plaintiff's OSHA claims should therefore be addressed under the Kentucky Occupational Health and Safety Act ("KOSHA"). The KOSHA prohibits discriminating against an employee who institutes a proceeding or files a complaint under

18

the KOSHA. KRS § 338.121(3)(a). Employees who believe they have been discriminated or retaliated against in violation of KOSHA may, "within a reasonable time after such violation occurs, file a complaint with the executive director alleging such discrimination." KRS § 338.121(3)(b). There is no provision for private lawsuits brought by individual employees who believe their employer violated the KOSHA and it has been held that a wrongful discharge claim under KOSHA was preempted by the KOSHA. *Hines v. Elf Atochem N. Am., Inc.,* 813 F. Supp. 550, 552 (W.D. Ky. 1993) (citing *Grzyb v. Evans*, 700 S.W.2d 399 (Ky. 1985)).

It is undisputed that Plaintiff never filed an administrative complaint as required by the KOSHA. Plaintiff's KOSHA claims cannot be advanced in a private action and are, therefore, dismissed.

**H.  First Amendment**

Plaintiff claims Defendant violated his First Amendment right to free speech. Specifically, Plaintiff contends that his right to free speech was abridged because he was terminated "for being outspoken" and "for complaining outside of the plant to the DOL." (Pl.'s Resp. to Def.'s Mot. 3) The requirements of the First Amendment of the United States Constitution extend only to government actors. "[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976) (citing

19

*Columbia Broadcasting Sys., Inc. v. Democratic Nat'l. Comm.*, 412 U.S. 94 (1973)). Plaintiff has offered no evidence to refute Defendant's contention that it is not a government actor subject to the requirements of the First Amendment's guarantee of freedom of speech; therefore, Plaintiff's claim that Defendant violated his First Amendment right to free speech is dismissed.

### IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendant's **Motion to Dismiss, or in the Alternative, for Summary Judgment** [Record No. 3], be, and the same hereby is, **GRANTED**.

This the 22nd day of November, 2006.



Signed By:

*Joseph M. Hood*

United States District Judge